**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

STATE OF NEW YORK; STATE OF
HAWAI'I; STATE OF CALIFORNIA;
STATE OF COLORADO; STATE OF
CONNECTICUT; STATE OF DELAWARE;
STATE OF ILLINOIS; STATE OF
MARYLAND; COMMONWEALTH OF
MASSACHUSETTS; STATE OF NEVADA;
STATE OF NEW JERSEY; STATE OF
NEW MEXICO; STATE OF OREGON;
STATE OF RHODE ISLAND; STATE OF
WASHINGTON; STATE OF WISCONSIN

               *Plaintiffs,*

v.

NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as
Acting Director of the National Science
Foundation,

               *Defendants.*

Case No. 25-4452

---

**<u>REPLY IN SUPPORT OF PLAINTIFF STATES'
MOTION FOR A PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

I.    The Priority Directive ................................................................................................ 1

  A.  The Tucker Act Does Not Apply ...................................................................... 1

  B. The Priority Directive is Not Committed to Agency Discretion.......................... 4

  C. The Priority Directive is Arbitrary and Capricious............................................ 5

  D. The Priority Directive is Contrary to Law ....................................................... 6

  E. The Priority Directive is Unconstitutional......................................................... 6

II.    The Indirect Cost Directive ...................................................................................... 7

  A. The Court Has Jurisdiction .............................................................................. 7

  B. Plaintiffs Are Likely to Prevail on the Merits of the Challenge to the Indirect Cost Directive

      ......................................................................................................................... 8

  C. Requested Relief .............................................................................................. 9

III.    Plaintiffs Have Demonstrated Irreparable Harm............................................... 10

IV.    The Balance of Equities and Public Interest Favor Plaintiffs........................... 11

CONCLUSION.................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Lab'ys v. Gardner*,
    387 U.S. 136 (1967)................................................................................................3

*AIDS Vaccine Advocacy Coal. v. Dep't of State*,
    25-cv-00402-AHA (D.D.C.)....................................................................................3

*Albrecht v. Comm. on Emp. Benefits*,
    357 F.3d 62 (D.C. Cir. 2004)..................................................................................1

*Amerijet Int'l, Inc. v. Pistole*,
    753 F.3d 1343 (D.C. Cir. 2014)..............................................................................8

*Ass'n of Am. Univs. v. Dep't of Energy*,
    No. 25-cv-10912, 2025 WL 1414135 (D. Mass. May 15, 2025)............................9

*Ass'n of Am. Univs. v. Nat'l Sci. Found.*,
    No. 25 Civ. 11231 (D. Mass. June 20, 2025)..........................................................9

*Bowen v. Massachusetts*,
    487 U.S. 897 (1988)...........................................................................................2-3

*Center for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) .................................................................................7

*City & Cnty. of San Francisco v. Azar*,
    411 F. Supp. 3d 1001 (N.D. Cal. 2019) .................................................................9

*Comty. Legal Servs. E. Palo Alto v. U. S. Dep't of Health & Hum. Servs.*,
    137 F.4th 932 (9th Cir. 2025) ............................................................................1, 3

*Dalton v. Specter*,
    511 U.S. 462 (1994)...............................................................................................6

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019)...............................................................................................4

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020)...................................................................................................5

*Dep't of State v. AIDS Vaccine Advoc. Coal.*,
  145 S. Ct. 753 (2025) ................................................................................................3

*Department of Education. v. California*,
  145 S. Ct. 966 (2025) ................................................................................................2

*FCC v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009) ..................................................................................................5

*In re Aiken Cnty.*,
  725 F.3d 255 (D.C. Cir. 2013) ..................................................................................7

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ....................................................................................11

*Massachusetts v. Kennedy*,
  No. 25-cv-10338, 2025 WL 702163 (D. Mass. Mar. 5, 2025) ..............................6, 9

*Massachusetts v. Kennedy*,
  No. CV 25-10814, 2025 WL 1371785 (D. Mass. May 12, 2025) ............................2

*Massachusetts v. Nat'l Insts. of Health*,
  No. 25-1343 (1st Cir.) ................................................................................................9

*Md. Dep't of Hum. Resources v. Dep't of Health & Hum. Servs.*,
  763 F.2d 1441 (D.C. Cir. 1985) ................................................................................2

*Michigan v. EPA*,
  576 U.S. 743 (2015) ..................................................................................................9

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ....................................................................................................5

*Murthy v. Missouri*,
  603 U.S. 43 (2024) ....................................................................................................8

*New York v. McMahon*,
  No. 25-10601-MJJ, 2025 WL 1463009 (D. Mass. May 22, 2025)............................7

*New York v. Trump*,
  769 F. Supp. 3d 119 ................................................................................................11

*Printz v. United States*,
  521 U.S. 898 (1997) ..................................................................................................7

*Sierra Club v. Trump*,
   963 F.3d 874 (9th Cir. 2020) ..................................................................................7

*Sustainability Institute v. Trump*,
   No. 25-1575, 2025 WL 1587100 (4th Cir. Jun 5, 2025)............................................3

**Federal Statutes**

41 U.S.C.
   § 4708............................................................................................................9

42 U.S.C.
   § 1862p-14(a) ..................................................................................................4
   § 1862s(b) .......................................................................................................4
   § 1870(c) .........................................................................................................4
   § 1873(e) ......................................................................................................4, 9

**Federal Regulations**

2 C.F.R.
   § 200.414(c) .....................................................................................................9

As Plaintiffs' Motion and 69 supporting declarations demonstrate, Defendants' unlawful Priority Directive and Indirect Cost Directive are causing immediate and irreparable harm. In response, Defendants mischaracterize Plaintiffs' claims and make unfounded assertions of vast agency discretion—none of which persuasively disputes that Defendants acted arbitrarily and that the challenged Directives flout decades-old, specific congressional directives as to NSF's priorities, and violate the applicable statutory and regulatory scheme for negotiating indirect cost rates. Because Plaintiffs have satisfied each preliminary injunction factor, they respectfully request that this Court grant their motion.

## I.      The Priority Directive

### A.      The Tucker Act Does Not Apply

Defendants attempt to wrest jurisdiction from this Court by contending that Plaintiffs' APA and constitutional claims as to the Priority Directive are contract claims in disguise and therefore must be heard by the Court of Federal Claims. ECF No. 63 ("Opp'n"), at 7-10. Defendants are wrong. To determine whether a claim falls within the Tucker Act, courts look to (1) "the source of the rights upon which the plaintiff bases its claims" and (2) "the type of relief sought." *Albrecht v. Comm. on Emp. Benefits*, 357 F.3d 62, 68 (D.C. Cir. 2004) (quotation omitted). Both indicate that the Tucker Act does not apply.

First, the sources of rights for Plaintiffs' claims are the APA and the Constitution, not—as Defendants contend—the terms and conditions of any grant agreement. Plaintiffs do not assert that Defendants violated any contractual term, and no such term must be considered to resolve Plaintiffs' claims. What Plaintiffs challenge is the Priority Directive—a categorical policy that purported to change NSF's priorities, without complying with the APA and in direct contravention of Congress's statutory priorities for NSF. Those claims are statutory and constitutional, not contractual. *See Comty. Legal Servs. E. Palo Alto v. U. S. Dep't of Health & Hum. Servs.*, 137 F.4th

1

932, 938 (9th Cir. 2025) ("If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does." (cleaned up)). That Defendants decided to implement their Priority Directive in part through mass terminations of grants does not transform Plaintiffs' APA and constitutional claims into contract claims. Because Plaintiffs' challenges to the Priority Directive "turn on the interpretation of statutes and regulations," not "the interpretation of an agreement negotiated by the parties," they are not contract claims "for Tucker Act purposes." *Md. Dep't of Hum. Resources v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1449 (D.C. Cir. 1985).

Second, the type of relief sought weighs in favor of this Court's jurisdiction. Plaintiffs do not seek monetary damages; instead, consistent with their APA and constitutional claims, they seek to vacate the Priority Directive, and declaratory and injunctive relief as to the Directive and its implementation. *See Massachusetts v. Kennedy*, No. 25-cv-10814, 2025 WL 1371785, at *5-9 (D. Mass. May 12, 2025)*.* Even if a favorable ruling might result in a chain of events leading to the disbursement of funds, that does not transform the analysis. The Supreme Court has held that challenging agency action that implements a broadly-applicable policy does not amount to a request for "money damages" *even if* "a judicial remedy may require one party to pay money to another." *Bowen v. Massachusetts*, 487 U.S. 897, 893 (1988). And despite asking this Court to send Plaintiffs to the Court of Federal Claims, Defendants nowhere explain how that Court could possibly grant Plaintiffs' requested relief. *See id.* at 905 (Court of Federal Claims "does not have the general equitable powers of a district court to grant prospective relief").

Defendants' reliance on *Department of Education. v. California*, 145 S. Ct. 966 (2025), is unavailing. Opp'n 8-9. That nonprecedential stay order was issued "with barebones briefing, no

argument, and scarce time for reflection," *Id*. at 969 (Kagan, J., dissenting).[1] It also did not overrule *Bowen*; indeed, the majority cited to *Bowen* as controlling law. *Id*. at 968. And just a few weeks before *California*, the Supreme Court declined the federal government's invitation to apply the Tucker Act to a case involving a freeze on the payment of certain foreign-aid funds*, see Dep't of State v. AIDS Vaccine Advoc. Coal*., 145 S. Ct. 753 (2025), demonstrating that *California* should not be read as expansively as Defendants wish.

Defendants also nowhere acknowledge that their Tucker Act argument cannot possibly affect Plaintiffs' constitutional claims. As Defendants' own opposition indicates, the Tucker Act argument is based on *the APA's* waiver of sovereign immunity, Opp'n 7, and counsel for the government in another case conceded that the Tucker Act did not apply to a constitutional separation of powers claim for precisely this reason, *see AIDS Vaccine Advocacy Coal. v. Dep't of State*, 25-cv-00402-AHA (D.D.C.), ECF No. 56 at 87.

Ultimately, "[s]eeking to ensure compliance with statutory and regulatory commands," as Plaintiffs do, "is a matter beyond the scope of the Tucker Act's exclusive jurisdiction." *Cmty. Legal*, 137 F.4th at 938. Accepting Defendants' position could allow agencies to pursue unlawful policies with effective impunity, given the Court of Federal Claims' limited authority to award non-monetary relief, so long as those policies are implemented in some way that touches on grants. Such a patently absurd result is contrary to the APA's "basic presumption of judicial review." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967).

---

[1] The same could be said of the divided stay order in *Sustainability Institute v. Trump*, No. 25-1575, 2025 WL 1587100 (4th Cir. Jun 5, 2025). Opp'n at 10.

### B.    The Priority Directive is Not Committed to Agency Discretion

Because the APA "embodies a basic presumption of judicial review," the Supreme Court has read the "committed to agency discretion" exception "quite narrowly," limiting it to "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Com. v. New York*, 588 U.S. 752, 771-72 (2019) (cleaned up). That is not the case here. Congress provided meaningful statutory standards to judge NSF's exercise of discretion and explicitly directed NSF to fund certain projects aimed at increasing participation by underrepresented groups in STEM. *See* ECF No. 6 ("Mem."), at 16-17. As Defendants acknowledge, Stone Decl. ¶6, NSF is statutorily required to evaluate research projects based on two criteria: Intellectual Merit and Broader Impacts. 42 U.S.C. § 1862s(b). The Broader Impacts Criterion requires NSF to "identify and demonstrate project support of" seven enumerated goals, including "expanding participation of women and individuals from underrepresented groups in STEM." 42 U.S.C. § 1862p-14(a). But NSF now advises applicants to "prioritize the first six broader impacts goals," and not this last goal. Mem. Ex. 2 (FAQ). That is plainly not "consistent with the direction provided in relevant statutes." Opp'n 11. Nowhere has Congress given NSF discretion to treat a congressionally established criterion for NSF support as a *disqualifying* factor and to advise applicants to ignore it.[2] Far from implementing

---

[2] Defendants point to two statutes in alleged support. Opp'n 10-11. The first, 42 U.S.C. § 1870(c), states that NSF has authority "to enter into contracts … for the carrying on … of such scientific and engineering activities as the Foundation deems necessary." The second, 42 U.S.C. §1873(e), sets out general discretion to consider four objectives in "contracts or other arrangements for scientific or engineering research." Defendants contend that these general provisions control over the far more specific program requirements Plaintiffs identified. That is wrong. First, there is no conflict between the provisions. General authority from Congress to exercise discretion in contracting is compatible with congressional directives to fund and prioritize particular types of projects. Second, even if the statutes did conflict, the specific congressional directives Plaintiffs cite would take precedence over the generic statutes Defendants reference.

discretion conferred by Congress, the Policy Directive jettisons Congress's decades-long directives to increase participation by underrepresented populations in STEM.

### C.        The Priority Directive is Arbitrary and Capricious

The Priority Directive is arbitrary and capricious because Defendants did not (1) demonstrate that the Directive is reasonable and reasonably explained; (2) acknowledge or provide good reason for the change in longstanding (and congressionally mandated) priorities, or (3) consider reliance interests. Mem. 13–16. Defendants argue that "a change in administration" is a "reasonable basis" for changed agency priorities, Opp'n 12, but that misses the point. A change in administration surely may spark a desire to change priorities, but that alone does not satisfy the agency's obligation to reasonably explain the basis for the change, and to grapple with the implications of its new stance. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Plaintiffs' motion explains why the Priority Directive fails to satisfy the APA, and simply parroting back the Priority Directive, as Defendants do, fails to demonstrate otherwise.

As to reliance interests, Defendants assert that NSF "necessarily understood and considered that it was terminating funding on which the grantee relied" and decided those interests "were outweighed." Opp'n 13. But that is *nowhere* apparent from the Priority Directive, and the Court must judge compliance based on the agency's "contemporaneous explanations," not the "post hoc rationalizations" offered for the first time in litigation. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 23-24 (2020). Nothing in the Priority Directive (or even the termination letters) gives even a hint that Defendants considered reliance interests, much less did so adequately. *See, e.g., Massachusetts v. NIH*, No. 25-cv-10338, 2025 WL 702163, at *21 (D. Mass. Mar. 5, 2025).

**D.     The Priority Directive is Contrary to Law**

The Priority Directive directly conflicts with multiple statutes requiring Defendants to fund and prioritize projects designed to increase the participation of women, minorities, and people with disabilities in STEM. *See* Mem. 16-17. Defendants respond with rhetorical sleight of hand, claiming that NSF is continuing to fund such projects, Opp'n 14, when the declaration cited for that proposition simply states that "NSF is continuing grants that broadly encourage increased participation in science and technology, which necessarily have the effect of supporting participation of particular groups, including women and minorities." Stone Decl. ¶21. This plainly fails to actually dispute that NSF is, as the Policy Directive indicates, refusing to fund programs specifically designed to broaden the participation of underrepresented groups in STEM. Congress has directed NSF to support exactly such projects, both generally and in myriad specific contexts. *See* Mem. 16-17. Treating such projects as categorically ineligible for NSF support simply is not consistent with the law, regardless of whether NSF continues to fund projects aimed at broadly encouraging increased participation in STEM.

**E.     The Priority Directive is Unconstitutional**

Defendants cite a single case, *Dalton v. Specter*, 511 U.S. 462 (1994), as support for their attempt to construe Plaintiffs' constitutional claims as statutory, but *Dalton* does not support that proposition. *Dalton* holds only that the federal government does not "*necessarily* violate[] the Constitution" when it exceeds the bounds of its statutory authority. 511 U.S. at 473 (emphasis added). That does not mean that action outside the scope of statutory authority can *never* give rise to a constitutional violation. *See Sierra Club v. Trump*, 963 F.3d 874, 889 (9th Cir. 2020) ("*Dalton* suggests that some actions in excess of statutory authority may be constitutional violations, while

others may not"), *vacated and remanded as moot sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021).

Defendants' arguments regarding Plaintiffs' Take Care Clause claim are equally unavailing. Courts have recognized that plaintiffs may invoke the Take Care Clause in litigation. *See, e.g.*, *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553, 561–62 (9th Cir. 2019) (considering merits of Take Care claim). And the cases Defendants cite to assert that the Take Care Clause does not provide for review of "the actions of subordinate Executive Branch officials" do not state that proposition. Opp'n 15. Indeed, *Printz v. United States*, 521 U.S. 898 (1997), suggests the very opposite. *See id.* at 922 (the President "'shall take Care that the Laws be faithfully executed,' Art. II, § 3, personally *and through officers whom he appoints*" (emphasis added)). *Cf. In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) ("[B]asic [Article II] principles apply to the President and subordinate executive agencies."). If Defendants were correct that the Take Care Clause only applies to the President, the Executive could evade Article II review by simply delegating unconstitutional tasks to subordinates. *New York v. McMahon*, No. 25-10601-MJJ, 2025 WL 1463009, n.15 (D. Mass. May 22, 2025).

## II.    The Indirect Cost Directive

### A.    The Court Has Jurisdiction

Defendants' primary defense of the Indirect Cost Directive—which had already gone into effect when this case was filed—is that it is not "ripe" and no injury is "likely to occur soon." Opp'n 17-18 (quotation omitted). That is factually and legally incorrect.

Defendants' argument that Plaintiffs have not "alleged" that any of their institutions have "applied for . . . funding under NSF's new policy," Opp'n 19, ignores the record evidence that Plaintiffs have already submitted numerous applications for funding to which the Directive will apply absent court intervention. For example, Oregon State University and the University of New

Mexico have approximately 170 and 200 pending applications, respectively. *See* NM-Holloway (First) Decl. ¶5; OR-Turner (First) Decl. ¶14. Plaintiffs will continue to apply for new awards that will also be subject to the Directive. *See, e.g.*, CO-Schwartz (First) Decl. ¶8; HI-Syrmos Decl. ¶8; NV-Gomez Decl. ¶8. Because there is "a substantial risk that, in the near future," "at least one plaintiff" will be harmed by "at least one Government defendant," Plaintiffs have standing. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).

That no Plaintiff has yet "received a new grant award at . . . 15 percent," Opp'n 17, is true only because NSF voluntarily stayed the Directive until it was enjoined. Faherty Decl. ¶4. And while that stay had been in effect, NSF was issuing notices of award (including to Plaintiff States) stating that as soon as it is permitted to do so, it will apply the 15% rate "for the life of the award." *Id*. ¶3. Record evidence also plainly contradicts Defendants' assertion that the Indirect Cost Directive does not apply "to *existing* awards." Opp'n 17; *see* Faherty Decl. Exs. 1-2.

### B.    Plaintiffs Are Likely to Prevail on the Merits of the Challenge to the Indirect Cost Directive

Defendants offer only the barest defense to Plaintiffs' claim that the Directive is arbitrary and capricious. Plaintiffs explained with specificity that the Directive's reasoning is conclusory: it does not explain what administrative burden will be reduced; does not explain why unlike institutions should be treated the same; and does not explain how the Directive will result in more research, not less. Mem. 21-23; *see Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). Defendants respond to none of these specific points, defending the Directive as non-conclusory only by quoting its supposed "rationale"—that "the justifications for the Cap are in its plain text." Opp'n 19-20. Critically, NSF does not even purport to have considered "the disadvantages of" its decision, as required by law. *See Michigan v. EPA*, 576 U.S. 743, 753 (2015).

Defendants' contention that the Indirect Cost Directive is "consistent with law," Opp'n 21-23, nowhere acknowledges that the same assertions have been repeatedly rejected by courts. Nor is there any effort to distinguish those cases. *See Massachusetts v. NIH*, 2025 WL 702163; *Ass'n of Am. Univs. v. Dep't of Energy*, No. 25-cv-10912, 2025 WL 1414135 (D. Mass. May 15, 2025). As those courts found, Defendants' interpretation of 41 U.S.C. § 4708 and 2 C.F.R. § 200.414(c) strains credulity by allowing the required "documented justification" to be a conclusory policy statement, *see* Opp'n 22, the "class" of federal awards to be 85% of all awards, *see id.* 23; Stone Decl. ¶ 5, and the "deviation" to become the rule. Nowhere does the text of the statute or regulation contemplate setting a single rate and applying it blanketly to all awards rather than setting the rate based on costs "incurred." 41 U.S.C. § 4708. Nor does the NSF Act, which grants some "discretion," 42 U.S.C. § 1873(e), allow NSF to ignore the statutory and regulatory scheme specific to indirect costs, *see* Opp'n 21.

### C.    Requested Relief

For these reasons, the District of Massachusetts recently declared unlawful and vacated the Indirect Cost Directive. *Ass'n of Am. Univs. v. Nat'l Sci. Found.*, No. 1:25-cv-11231, ECF No. 77 (D. Mass. June 20, 2025). That vacatur provides the full relief requested by Plaintiffs in this motion with respect to the Indirect Cost Directive. Plaintiffs nonetheless continue to seek adjudication of their preliminary injunction motion on the Indirect Cost Directive because of the strong likelihood that the government will appeal the *AAU* decision, as the government has in similar cases. *See, e.g.*, *Massachusetts v. Nat'l Insts. of Health*, No. 25-1343 (1st Cir.) (pending appeal of permanent injunction of NIH 15% indirect cost rate); *see also City & Cnty. of San Francisco v. Azar*, 411 F. Supp. 3d 1001, 1025-26 & n.4 (N.D. Cal. 2019) (granting plaintiffs' motion for summary judgment and vacating rule that had separately been vacated 12 days prior by another district court).

Alternatively, the Court could hold the Indirect Cost Directive portion of Plaintiffs' motion[3] in abeyance pending adjudication of any appeal of the *AAU* decision.

### III.    Plaintiffs Have Demonstrated Irreparable Harm

Plaintiffs have provided the Court with overwhelming evidence of the irreparable harm they will suffer absent preliminary relief: not only monetary harm, but also that Defendants' actions have caused or will cause loss of data analysis, cessation of research, reduction in infrastructure, job losses, and, critically, will halt scientific progress. Mem. 5-7, 11-12, 27-28.

Defendants first contend, without any specificity, that not every Plaintiff has made a clear showing of harm. Opp'n 24. But Plaintiffs have submitted over sixty declarations showing specific harm to IHEs within each Plaintiff State, ECF Nos. 7-6 to 7-68, 37-1 to 37-6. Defendants also contend that "Plaintiffs' circumstances vary significantly," Opp'n 24, but do not identify any purported variations among Plaintiffs, explain the materiality, or acknowledge that Defendants' conduct was uniform to all.

Defendants attempt to recast Plaintiffs' injury from the Priority Directive as a temporary loss of income and thus not the kind of irreparable harm sufficient for a preliminary injunction, Opp'n 24. But loss of funds constitutes irreparable harm in these circumstances, Mem. 28, and Plaintiffs demonstrated that *in addition to* the loss of grants, their IHEs faced stopping work on their important research projects, laying off staff, and cutting training and mentorship programs. Mem. 5-7, 27-28. The record also makes clear that loss of intellectual rigor and breakthrough analysis would irreparably result from the Directive. *Id.*

---

[3] The *AAU* case does not involve the Priority Directive, and Plaintiffs continue to seek a preliminary injunction as to that Directive.

Defendants' assertion that Plaintiffs have no irreparable harm from the Indirect Cost Directive, *see* Opp'n 24-25, is based on the same flawed factual premises as their standing argument. Grants *have* been issued by NSF and *have* been awarded to Plaintiffs that will include the 15% cap as soon as the courts allow, retroactive to May 5, 2025, including as to existing grants; plus, Plaintiffs will continue to apply to new funding opportunities. *See supra* 7-8. Plaintiffs' harms, which jeopardize their ability to "keep the lights on," *see* NY-Friedman Decl. ¶15, are therefore not "conjecture, surmise," or "unsubstantiated fear[]," *see* Opp'n 25 (quotation omitted). Although the rule has been vacated, Plaintiffs will face this irreparable harm if the vacatur is overturned or narrowed on appeal—retroactive to the original date of the Directive.

## IV.    The Balance of Equities and Public Interest Favor Plaintiffs.

Defendants' conclusory assertions about the balance of equities and public interest are meritless. *See* Opp'n 25-26. Plaintiffs have amply demonstrated that Defendants' conduct violates the law, and there is "no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Indeed, Defendants "[cannot be] harmed by an order prohibiting [them] from violating the law." *New York v. Trump*, 769 F. Supp. 3d 119, 146 (D.R.I. 2025). Defendants also entirely fail to show that the public interest runs in their favor. All Defendants say is that "there is no public interest in forcing federal agencies to make certain discretionary funding decisions, particularly where the requested injunction would restrain the Government from promoting lawful and important priorities." Opp'n 25. But that assertion merely equates, with no real explanation, the public's interest with Defendants' own interest in their new priorities. Plaintiffs, on the other hand, have demonstrated that cessation of research, job losses, and interference with scientific progress, among other things, will result from Defendants' actions—harms with societal impact that Defendants nowhere dispute.

11

## **CONCLUSION**

Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

Dated: June 23, 2025                              Respectfully submitted,

**LETITIA JAMES**                                 **ANNE E. LOPEZ**
Attorney General for the State of New York        Attorney General for the State of Hawaiʻi

By: */s/ Rabia Muqaddam*                          By: */s/ Kalikoʻonālani D. Fernandes*
Rabia Muqaddam                                    David D. Day
Special Counsel for Federal Initiatives           Special Assistant to the Attorney General
Colleen K. Faherty                                Kalikoʻonālani D. Fernandes
Special Trial Counsel                             Solicitor General
Jessica Ranucci                                   Caitlyn B. Carpenter
Special Counsel                                   Deputy Solicitor General
28 Liberty St.                                    425 Queen Street
New York, NY 10005                                Honolulu, HI 96813
(212) 416-8883                                    (808) 586-1360
Rabia.muqaddam@ag.ny.gov                          david.d.day@hawaii.gov
Colleen.Faherty@ag.ny.gov                         kaliko.d.fernandes@hawaii.gov
Jessica.Ranucci@ag.ny.gov                         caitlyn.b.carpenter@hawaii.gov

*Attorneys for the State of New York*             *Attorneys for the State of Hawaiʻi*

**ROB BONTA**                                     **PHILIP J. WEISER**
Attorney General for the State of California       Attorney General for the State of Colorado

By: */s/ José Pablo Galán de la Cruz*             By: /s/ *Lauren Peach*
José Pablo Galán de la Cruz                       Shannon Stevenson*
Deputy Attorney General                           Solicitor General
Maureen C. Onyeagbako                             Lauren Peach*
Supervising Deputy Attorney General               First Assistant Attorney General
Cheryl L. Feiner*                                 Ralph L. Carr Judicial Center
Senior Assistant Attorney General                 1300 Broadway, 10th Floor
California Attorney General's Office               Denver, CO 80203
455 Golden Gate Avenue, Suite 11000               (720) 508-6000
San Francisco, CA 94102                            Lauren.Peach@coag.gov
(415) 510-3439
Pablo.Galan@doj.ca.gov                            *Attorneys for the State of Colorado*
Maureen.Onyeagbako@doj.ca.gov
Cheryl.Feiner@doj.ca.gov

*Attorneys for the State of California*

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: /s/ Ashley Meskill
Ashley Meskill*
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
ashley.meskill@ct.gov

*Attorney for the State of Connecticut*


**KWAME RAOUL**
Attorney General of Illinois

By: /s/ *Cara Hendrickson*
Cara Hendrickson
Assistant Chief Deputy Attorney General
Rebekah Newman*
Assistant Attorney General
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(312) 814-3000
Cara.Hendrickson@ilag.gov
Rebekah.Newman@ilag.gov

*Attorneys for the State of Illinois*


**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: /s/ *Vanessa L. Kassab*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*


**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: /s/ Virginia A. Williamson
Virginia A. Williamson
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6584
VWilliamson@oag.state.md.us

*Attorneys for the State of Maryland*

14

**ANDREA JOY CAMPBELL**
Attorney General for the State of
Massachusetts

/s/ Katherine Dirks
Katherine Dirks*
Chief State Trial Counsel
Jak Kundl*
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

*Attorneys for the Commonwealth of
Massachusetts*

**AARON D. FORD**
Attorney General for the State of Nevada

By: /s/ Heidi Parry Stern
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov

*Attorney for the State of Nevada*

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Farng-Yi Foo*
Angela Cai
Executive Assistant Attorney General
Farng-Yi D. Foo
Anaiis Gonzalez*
Deputy Attorneys General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5365
Farng-Yi.Foo@law.njoag.gov

*Attorneys for the State of New Jersey*

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: /s/ Astrid Carrete
Astrid Carrete*
Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM  87504
(505) 490-4060
acarrete@nmdoj.gov

*Attorney for the State of New Mexico*

15

**DAN RAYFIELD**
Attorney General of the State of Oregon

By: /s/ *Anuradha Sawkar*
Anuradha Sawkar*
Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
anu.sawkar@doj.oregon.gov

*Attorneys for the State of Oregon*

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: /s/ *Ellen Range*
Ellen Range
Assistant Attorney General
Office of the Washington State Attorney
General
7141 Cleanwater Drive SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470
Ellen.Range@atg.wa.gov

*Attorney for the State of Washington*

*Pro hac vice application forthcoming*

**PETER F. NERONHA**
Attorney General for the State of Rhode
Island

By: /s/ *Leonard Giarrano IV*
Leonard Giarrano IV*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2062
lgiarrano@riag.ri.gov

*Attorney for the State of Rhode Island*

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: /s/ Aaron J. Bibb
Aaron J. Bibb
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-0810
aaron.bibb@wisdoj.gov

*Attorney for the State of Wisconsin*

## CERTIFICATION

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 3,498 words, calculated using Microsoft Word, which complies with Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
      June 23, 2025

                                    LETITIA JAMES
                                    Attorney General of the State of New York
                                    By: /s Colleen K. Faherty
                                    Colleen K. Faherty
                                        Special Trial Counsel
                                    28 Liberty Street
                                    New York, NY 10005
                                    (212) 416-6046
                                    Colleen.Faherty@ag.ny.gov