## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK; STATE OF
HAWAIʻI; STATE OF CALIFORNIA;
STATE OF COLORADO; STATE OF
CONNECTICUT; STATE OF DELAWARE;
STATE OF ILLINOIS; STATE OF
MARYLAND; COMMONWEALTH OF
MASSACHUSETTS; STATE OF NEVADA;
STATE OF NEW JERSEY; STATE OF
NEW MEXICO; STATE OF OREGON;
STATE OF RHODE ISLAND; STATE OF
WASHINGTON; STATE OF WISCONSIN,

                    *Plaintiffs,*

v.

NATIONAL SCIENCE FOUNDATION;
BRIAN STONE, in his official capacity as
Acting Director of the National Science
Foundation,

                    *Defendants.*

Case No. 25-4452 (JPC)

## MEMORANDUM OF LAW IN OPPOSITION TO
## MOTION TO INTERVENE BY THE
## NATIONAL ASSOCIATION OF SCHOLARS

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 1

    I.    The Priority Directive ................................................................................................ 1

    II.    NAS's Intervention Motion ....................................................................................... 2

STANDARD ........................................................................................................................ 2

ARGUMENT ....................................................................................................................... 4

    I.    NAS is Not Entitled to Intervene as of Right ........................................................... 4

        A.    NAS Lacks a Legally Protected Interest in this Case ......................................... 4

        B.    Disposition of Plaintiffs' Claims Will Not Impair or Impede NAS's Interest ............... 6

        C.    Defendants Adequately Represent Any Interest NAS Has in Implementing the Priority Directive ................................................................................................................. 6

        D.    NAS's Alleged Interest Could Have Been Raised for Decades Prior and Independent of Plaintiffs' Claims ........................................................................................................ 8

    II.    The Court Should Not Allow Permissive Intervention ............................................. 9

CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bldg. and Realty Inst. of Westchester and Putnam Counties, Inc. v. New York*,
No. 19-CV-11285, 2020 WL 5667181 (S.D.N.Y Sept. 23, 2020) ...........................................7

*Brennan v. N.Y.C. Bd. of Educ.*,
260 F.3d 123 (2d Cir. 2001)................................................................................................3, 5

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
250 F.3d 171 (2d Cir. 2001)..................................................................................................6-7

*Deutschman v. Beneficial Corp.*,
132 F.R.D. 359 (D. Del. 1990) ...............................................................................................7

*Etters v. Bennett*,
No. 5:09-CT-3187-D, 2011 WL 3320489 (E.D.N.C. Aug. 1, 2011).......................................7

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014)................................................................................................3-6

*In re N.Y.C. Policing During Summer 2020 Demonstrations*,
27 F.4th 792 (2d Cir. 2022) ....................................................................................................4

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
471 F.3d 377 (2d Cir. 2006)................................................................................................3, 6

*New York v. U.S. Dep't of Health and Human Servs.*,
No. 19 Civ. 4676, 2019 WL 3531960 (S.D.N.Y. Aug. 2, 2019) .............................................7

*Pennsylvania v. Rizzo*,
530 F.2d 501 (3d Cir. 1976)....................................................................................................8

*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*,
467 F.3d 238 (2d Cir. 2006)................................................................................................3, 9

*Rodriguez v. Pataki*,
211 F.R.D. 215 (S.D.N.Y. 2002) ..........................................................................................6, 9

*Town of Southold v. Wheeler*,
48 F.4th 67 (2d Cir. 2022) .....................................................................................................1

*United States v. City of Los Angeles, Cal.*,
    288 F.3d 391 (9th Cir. 2002) ............................................................................7

*United States v. City of New York*,
    198 F.3d 360 (2d Cir. 1999)....................................................................1, 5, 7

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994)..............................................................................8

*Vinson v. Washington Gas Light Co.*,
    321 U.S. 489 (1944)......................................................................................1

*Wade v. Goldschmidt*,
    673 F.2d 182 (7th Cir. 1982) .........................................................................8

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)........................................................................6, 9

**Rules**

Fed. R. Civ. P. 19 ...............................................................................................6

Fed. R. Civ. P. 24 .......................................................................................... passim

iv

## PRELIMINARY STATEMENT

The National Association of Scholars ("NAS") proposes to fundamentally change the nature of this litigation, not to simply intervene in the existing dispute. That is evidenced by NAS's invention of claims—*e.g.*, that Plaintiffs "seek to impose racial and gender preferences for National Science Foundation research funding," Mem. Supp. Mot. to Intervene ("Mot."), ECF No. 63 at 8—that it then asserts it needs intervention to rebut. But NAS cannot rewrite Plaintiffs' Complaint to manufacture a legally protected interest in this dispute and thereby inject new issues into it. *See, e.g.*, *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999) (intervention cannot be used to "inject collateral issues"). Nor can NAS use intervention to attempt a *post hoc* rationalization for NSF's action that NSF itself has never advanced. *See Town of Southold v. Wheeler*, 48 F.4th 67, 83 (2d Cir. 2022) ("'[A] court may uphold agency action only on the grounds that the agency invoked when it took the action.'" (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)); *Vinson v. Washington Gas Light Co*., 321 U.S. 489, 498 (1944) ("[O]ne of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding."). NAS fails to meet the standard for either intervention as of right or permissive intervention, and its motion should therefore be denied.

## FACTUAL BACKGROUND

### I.     The Priority Directive

Plaintiffs challenge two Directives by NSF: the Priority Directive and the Indirect Cost Directive.  The Priority Directive is the sole focus of NAS's intervention motion. *See* Mot. at 4 n.2.

1

As outlined in Plaintiffs' Complaint and preliminary injunction motion, on April 18, 2025, NSF announced a new set of priorities that contradict longstanding, congressionally mandated agency priorities. Plaintiffs assert that the Priority Directive violates the APA because it is arbitrary and capricious (Count I) and contrary to law (Count II); that it violates separation of powers (Count III) and the Take Care Clause (Count IV); and that it is *ultra vires* (Count V). Plaintiffs do not claim that any statute requires or permits NSF to make research grant awards based on gender or racial preferences, much less "demand[]" that NSF implement such preferences. Mot. at 9. Plaintiffs' challenge to the Priority Directive is fundamentally about types of projects NSF has categorically disqualified from NSF support, despite Congress' direction to the contrary. It has nothing to do with the characteristics (protected or otherwise) of applicants or Principal Investigators who seek funding to pursue any project.

## II.    NAS's Intervention Motion

NAS seeks to intervene in this action because it asserts that it "has an interest in ensuring that National Science Foundation research grants are awarded based on scientific merit, rather than on unlawful racial or gender preferences contrary to the Constitution's guarantee of Equal Protection." Mot. at 7.  It claims that "Plaintiffs seek to impose racial and gender preferences for National Science Foundation research funding" and that this "would compromise NAS's interests." *Id.* at 8. It also suggests that its "members would be at a disadvantage when applying for NSF grants if they don't fall into a gender or racial preference that Plaintiffs assert is mandated by statute." *Id.* at 8 n.3.

## STANDARD

Federal Rule of Civil Procedure 24(a) provides for intervention as of right, stating in relevant part:

> On timely motion, the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene as of right under Rule 24(a)(2), the putative intervenor must establish that: "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 389 (2d Cir. 2006); *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 128–29 (2d Cir. 2001). "Failure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (emphasis in original).

Rule 24(b) governs permissive intervention, stating in relevant part that, "[o]n timely motion, the court *may* permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." (emphasis added). In exercising its discretion, the Court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The court considers "substantially the same factors whether the claim for intervention is 'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

## ARGUMENT

### I.      NAS is Not Entitled to Intervene as of Right

NAS's intervention motion is based on a fundamental mischaracterization of this case. Central to NAS's theory of intervention is the idea that Plaintiffs' claims advocate for "DEI ideology," a term that NAS nowhere attempts to define, and seek to "impose racial and gender preferences for [NSF] research funding," a prospect NAS fears will put its members at a disadvantage. Mot. at 8-9. That is wrong. Plaintiffs' claims nowhere demand the preferences NAS insists are at issue in this dispute. The statutory framework underpinning Plaintiffs' claims directs NSF to fund or prioritize certain types of *projects* and *programs* aimed at increasing participation by underrepresented groups in STEM, *see* Pls.' Mem. Supp. Prelim. Inj., ECF No. 6, at 16-17, not to award grants based on the race or sex of the applicant, as NAS suggests. Because of this fundamental misunderstanding, NAS's arguments as to its interest in this dispute and the potential impairment of that interest entirely miss the mark.

### A.  NAS Lacks a Legally Protected Interest in this Case

"For an interest to be cognizable by Rule 24(a)(2), it must be direct, substantial, and legally protectable." *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (cleaned up). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Floyd*, 770 F.3d at 1060 (cleaned up). NAS's purported interests in this litigation fail to meet Rule 24(a)(2)'s standard.

NAS claims that it has a "cognizable interest in ensuring that National Research Funds are not required to rely on race- and sex-based discrimination in violation of the Equal Protection Clause," and that NSF grants "are awarded based on scientific merit, rather than on unlawful racial or gender preferences contrary to the Constitution's guarantee of Equal Protection." Mot. at 2, 7.

4

Beyond being based on a flawed understanding of Plaintiffs' claims, as noted above, NAS's purported interests are "remote from the subject matter of the proceeding." *Floyd*, 770 F.3d at 1060. This litigation does not involve any challenge to the constitutionality of the various statutes directing NSF to fund certain types of programs and projects—that would be an independent cause of action beyond the scope of this litigation. NAS attempts to dress up its affirmative objection to the statutes as a defensive interest in the existing litigation, but that contortion nonetheless runs up against the principle that intervention "cannot be used as a means to inject collateral issues into an existing action." *City of New York*, 198 F.3d at 365 (cleaned up). Intervention is a "procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand." *Floyd*, 770 F.3d at 1057. NAS's intervention threatens to result in *all three* of those characteristics, destroying the balance intervention is intended to accommodate. Simply put, whether certain statutes violate the Equal Protection Clause is "not at issue in this action, and as a proposed intervenor, [NAS] cannot make [it] an issue." *City of New York*, 198 F.3d at 365 (internal quotation marks omitted). That is especially true because Defendants did not offer any alleged equal protection issue as a basis for the Priority Directive, and agency action cannot be justified based on *post hoc* rationalizations.

Even taken at face value, NAS's purported interest in its members applying for NSF grants without being at a disadvantage, Wood Decl. ¶ 18, is too speculative and remote to justify intervention. *See Brennan*, 260 F.3d at 132. NAS did not submit any evidence to substantiate its claim that certain of its members may be disadvantaged if the Priority Directive is enjoined, and any hypothetical harm is "contingent upon the occurrence of a sequence of events before it

becomes colorable." *Floyd*, 770 F.3d at 1061 (internal quotation marks omitted). NAS's desire to defend unnamed individuals from future, entirely hypothetical consequences of this litigation is too speculative of an interest to support intervention as of right.

## B.  Disposition of Plaintiffs' Claims Will Not Impair or Impede NAS's Interest

For the very same reasons that NAS lacks a cognizable interest in this litigation, it has failed to demonstrate that its purported interest will be impaired by the disposition of this action without its intervention. NAS's alleged interest is premised on a misunderstanding of Plaintiffs' claims as to the relevant statutory framework, meaning that the only interest it claims is not even at issue in this dispute. *See supra* 4-5. There is no reason the disposition of this lawsuit would impair or impede protection of an interest that is plainly not at stake. Even after resolution of this dispute, NAS will retain the ability to protect whatever interest it might have in disputing the constitutionality or wisdom of the underlying statutes through advocacy, education, or litigation. *See Rodriguez v. Pataki*, 211 F.R.D. 215, 218 (S.D.N.Y. 2002) ("Since the issues do not coincide, whatever the outcome of this litigation, [proposed intervenor] is free to bring an independent action."); *MasterCard.*, 471 F.3d at 386-90 (applying Rule 19(a) necessary party standard to Rule 24(a) intervention and denying intervention because "[e]ven if [plaintiff] prevails and receives the relief it seeks . . . [the proposed intervenor] has the right to sue" after the litigation to protect its own interests).

## C.  Defendants Adequately Represent Any Interest NAS Has in Implementing the Priority Directive

NAS shares "the same ultimate objective" as Defendants in this matter—defending the implementation of the Priority Directive. *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). As such, there is a "presumption of adequate representation." *Id.* at 180; *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) ("Where

there is an identity of interest between a putative intervenor and a party, adequate representation is assured.").

A proposed intervenor may rebut this presumption by showing evidence of "collusion, adversity of interest, nonfeasance, or incompetence." *Butler*, *Fitzgerald & Potter*, 250 F.3d at 180. NAS fails to present colorable evidence of any such inadequacy.[1] Instead, NAS argues that it would litigate the case differently—by raising their equal protection challenges against the NSF Act. The germaneness of these arguments aside, *see sup*ra 4-6, divergent views of a "particular litigation strategy" is not evidence of inadequate representation. *City of New York*, 198 F.3d at 367; *see Bldg. and Realty Inst. of Westchester and Putnam Counties, Inc. v. New York*, No. 19-CV-11285, 2020 WL 5667181, *5 (S.D.N.Y Sept. 23, 2020) (finding that a failure of a party to incorporate intervenor's legal theories did not establish that the party will not vigorously prosecute an action or adequately defend their identical objectives). "If disagreement with an existing party over trial strategy qualified as inadequate representation, the requirement of Rule 24 would have no meaning." *Butler, Fitzgerald & Potter*, 250 F.3d at 181.

NAS cannot rely on its intention to inject extraneous and collateral issues into this case as evidence that (1) its objectives differ from those of Defendants and (2) that Defendants cannot

---

[1] NAS points to a theoretical possibility that "[t]his administration or a new administration could resurrect policies for allocating research funding" that existed prior to the Priority Directive. Mot. at 11. But it is purely speculative that the current administration, which is defending the Priority Directive, would suddenly change course. Case law is clear that "[f]ear of future divergence of interests is insufficient to establish inadequate representation in the absence of a current conflict." *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 381 (D. Del. 1990); *Etters v. Bennett*, No. 5:09-CT-3187-D, 2011 WL 3320489, at *2 (E.D.N.C. Aug. 1, 2011). And "the possibility of a change in policy by a future Administration—an argument available in every case in which the federal Government defends a rule or statute—conflicts with the presumption that the defense by the federal government . . . is adequate." *New York v. U.S. Dep't of Health and Human Servs.*, No. 19 Civ. 4676, 2019 WL 3531960, *6 (S.D.N.Y. Aug. 2, 2019); *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002).

vigorously and competently defend against Plaintiffs' claims. NAS also cites no case where intervention has been granted for a private party to stand on the same side as a federal agency as it defends its policy's compliance with statutory and regulatory directives. *See Wade v. Goldschmidt*, 673 F.2d 182, 185 (7th Cir. 1982) (emphasizing that where suits are brought to ensure the government's administrative decisions comply with federal statutes, "the governmental bodies charged with compliance can be the only defendants."); *Pennsylvania v. Rizzo,* 530 F.2d 501, 505 (3d Cir. 1976) ("Where official policies and practices are challenged, it seems unlikely that anyone could be better situated to defend than the governmental department involved and its officers."). Indeed, NAS's insistence that it seeks differing objectives only serves to underscore the fact that its intervention is an ill-disguised attempt to backdoor its affirmative claims before a court.

### D. NAS's Alleged Interest Could Have Been Raised for Decades Prior and Independent of Plaintiffs' Claims

While Plaintiffs acknowledge that this matter is in its infancy, that is not the only factor to consider when measuring a potential intervenor's timeliness. Here, the unusual circumstances of NAS's position and the absence of prejudice to NAS weigh against a finding of timeliness and underscore the inappropriateness of NAS's attempt to intervene. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) (acknowledging that timeliness "is not confined strictly to chronology" and that courts consider "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness"). NAS is in the unusual position of attempting to defend Defendants' actions by relying on a legal theory Defendants themselves have not raised. It is additionally unusual as NAS seeks to defend the mere months-old Priority Directive by attacking the validity of statutes that preexisted the Priority Directive by *decades*. NAS could have raised its

8

affirmative complaints about those statutes at any time during that lengthy period. The early stage at which NAS seeks to intervene in this action does not in any way negate that intervention is simply not the appropriate mechanism for NAS to further its alleged interest. *See supra* 4-7.

## II.    The Court Should Not Allow Permissive Intervention

Because permissive intervention is governed by "substantially the same factors" as intervention as a matter of right, *R Best Produce, Inc.*, 467 F.3d at 240, the Court should likewise deny NAS's motion under Federal Rule of Civil Procedure 24(b). Permissive intervention is available only to a party that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Indeed, courts applying Rule 24(b) specifically consider whether the proposed claims are extraneous to the issues before the court and whether the legal theories are going to significantly broaden the scope of the case. *See Wash. Elec. Co-op., Inc.*, 922 F.2d at 98 (upholding denial of permissive intervention where intervention "would inject issues of Vermont regulatory law into a contractual dispute"); *see also Rodriguez*, 211 F.R.D. at 219 (refusing permissive intervention sought by a proposed intervenor plaintiff who "presented a unique set of claims that are unrelated to the claims and relief sought by the plaintiffs").

As detailed above, NAS's proposed intervention would transform Plaintiffs' case from a relatively straightforward dispute over NSF's adoption and implementation of the Priority Directive into a broad constitutional challenge to the underlying statutory framework, apparently involving dozens of statutes enacted by Congress across more than four decades. Yet the Priority Directive was not based on any determination by NSF that even one of those statutes is unconstitutional. And NAS's proposed interest in opposing racial or other preferences in the awarding of NSF grants is not responsive to any claim Plaintiffs have raised. The litigation is about

the types of projects NSF's Priority Directive has categorically disqualified, not about the characteristics of any recipients of, or applicants for, NSF funding. It should stay that way.

## <u>CONCLUSION</u>

Plaintiffs respectfully ask the Court to deny NAS's motion to intervene.

Dated: June 25, 2025                           Respectfully submitted,


**LETITIA JAMES**                              **ANNE E. LOPEZ**
Attorney General for the State of New York     Attorney General for the State of Hawaiʻi

By: */s/ Rabia Muqaddam*                       By: */s/ Kalikoʻonālani D. Fernandes*
Rabia Muqaddam                                 David D. Day
Special Counsel for Federal Initiatives        Special Assistant to the Attorney General
Colleen K. Faherty                             Kalikoʻonālani D. Fernandes
Special Trial Counsel                          Solicitor General
Jessica Ranucci                                Caitlyn B. Carpenter
Special Counsel                                Deputy Solicitor General
28 Liberty St.                                 425 Queen Street
New York, NY 10005                             Honolulu, HI 96813
(212) 416-8883                                 (808) 586-1360
Rabia.muqaddam@ag.ny.gov                       david.d.day@hawaii.gov
Colleen.Faherty@ag.ny.gov                      kaliko.d.fernandes@hawaii.gov
Jessica.Ranucci@ag.ny.gov                      caitlyn.b.carpenter@hawaii.gov

*Attorneys for the State of New York*          *Attorneys for the State of Hawaiʻi*


**ROB BONTA**                                  **PHILIP J. WEISER**
Attorney General for the State of California    Attorney General for the State of Colorado

By*: /s/ José Pablo Galán de la Cruz*          By: /s/ *Lauren Peach*
José Pablo Galán de la Cruz                    Shannon Stevenson*
Deputy Attorney General                        Solicitor General
Maureen C. Onyeagbako                          Lauren Peach*
Supervising Deputy Attorney General             First Assistant Attorney General
Cheryl L. Feiner                               Ralph L. Carr Judicial Center
Senior Assistant Attorney General              1300 Broadway, 10th Floor
California Attorney General's Office            Denver, CO 80203
455 Golden Gate Avenue, Suite 11000            (720) 508-6000
San Francisco, CA 94102                        Lauren.Peach@coag.gov
(415) 510-3439
Pablo.Galan@doj.ca.gov                         *Attorneys for the State of Colorado*
Maureen.Onyeagbako@doj.ca.gov
Cheryl.Feiner@doj.ca.gov

*Attorneys for the State of California*

11

**WILLIAM TONG**
Attorney General for the State of Connecticut

By: /s/ Ashley Meskill
Ashley Meskill*
Assistant Attorney General
Connecticut Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106
(860) 808-5270
ashley.meskill@ct.gov

*Attorney for the State of Connecticut*

**KWAME RAOUL**
Attorney General of Illinois

By: /s/ *Cara Hendrickson*
Cara Hendrickson
Assistant Chief Deputy Attorney General
Rebekah Newman*
Assistant Attorney General
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, IL 60603
(312) 814-3000
Cara.Hendrickson@ilag.gov
Rebekah.Newman@ilag.gov

*Attorneys for the State of Illinois*

**KATHLEEN JENNINGS**
Attorney General for the State of Delaware

By: /s/ *Vanessa L. Kassab*
Ian R. Liston*
Director of Impact Litigation
Vanessa L. Kassab*
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*

**ANTHONY G. BROWN**
Attorney General for the State of Maryland

By: /s/ Virginia A. Williamson
Virginia A. Williamson
*Assistant Attorney General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
410-576-6584
VWilliamson@oag.state.md.us

*Attorneys for the State of Maryland*

12

**ANDREA JOY CAMPBELL**
Attorney General for the State of
Massachusetts

/s/ Katherine Dirks
Katherine Dirks*
Chief State Trial Counsel
Jak Kundl*
Assistant Attorney General
Office of the Massachusetts Attorney General
1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

*Attorneys for the Commonwealth of Massachusetts*

**AARON D. FORD**
Attorney General for the State of Nevada

By: /s/ Heidi Parry Stern
Heidi Parry Stern*
Solicitor General
Office of the Nevada Attorney General
555 E. Washington Ave., Ste. 3900
Las Vegas, NV 89101
HStern@ag.nv.gov

*Attorney for the State of Nevada*

**MATTHEW J. PLATKIN**
Attorney General for the State of New Jersey

By: */s/ Farng-Yi Foo*
Angela Cai
Executive Assistant Attorney General
Farng-Yi D. Foo
Anaiis Gonzalez*
Deputy Attorneys General
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5365
Farng-Yi.Foo@law.njoag.gov

*Attorneys for the State of New Jersey*

**RAÚL TORREZ**
Attorney General for the State of New Mexico

By: /s/ Astrid Carrete
Astrid Carrete*
Counsel
New Mexico Department of Justice
P.O. Drawer 1508
Santa Fe, NM  87504
(505) 490-4060
acarrete@nmdoj.gov

*Attorney for the State of New Mexico*

13

**DAN RAYFIELD**
Attorney General of the State of Oregon

By: /s/ *Anuradha Sawkar*
Anuradha Sawkar*
Assistant Attorney General
100 SW Market Street
Portland, OR 97201
(971) 673-1880
anu.sawkar@doj.oregon.gov

*Attorneys for the State of Oregon*

**NICHOLAS W. BROWN**
Attorney General for the State of Washington

By: /s/ *Ellen Range*
Ellen Range
Assistant Attorney General
Office of the Washington State Attorney
General
7141 Cleanwater Drive SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470
Ellen.Range@atg.wa.gov

*Attorney for the State of Washington*

**PETER F. NERONHA**
Attorney General for the State of Rhode
Island

By: /s/ *Leonard Giarrano IV*
Leonard Giarrano IV*
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2062
lgiarrano@riag.ri.gov

*Attorney for the State of Rhode Island*

**JOSHUA L. KAUL**
Attorney General for the State of Wisconsin

By: /s/ Aaron J. Bibb
Aaron J. Bibb
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, WI 53707-7857
(608) 266-0810
aaron.bibb@wisdoj.gov

*Attorney for the State of Wisconsin*

*\*Pro hac vice application forthcoming*

14

**CERTIFICATION**

I certify that, excluding the caption, table of contents, table of authorities, signature

block, and this certification, the foregoing Memorandum of Law contains 2,982 words,

calculated using Microsoft Word, which complies with Rule 6.3 of the Local Rules of the United

States District Courts for the Southern and Eastern Districts of New York.


Dated: New York, New York
        June 25, 2025

                                                            LETITIA JAMES
Attorney General of the State of New York
By: /s Jessica Ranucci
Jessica Ranucci
    Special Counsel
28 Liberty Street
New York, NY 10005
jessica.ranucci@ag.ny.gov

15