UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
STATE OF NEW YORK, *et al.*,                                            :
                                                                        :
                                        Plaintiffs,                     :
                                                                        :
            -v-                                                         :        25 Civ. 4452 (JPC)
                                                                        :
NATIONAL SCIENCE FOUNDATION and BRIAN                                   :        OPINION AND ORDER
STONE, *in his official capacity as Acting Director of the*             :
*National Science Foundation*,                                          :
                                                                        :
                                        Defendants.                     :
                                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

The National Association of Scholars ("NAS") moves to intervene in this matter under Federal Rule of Civil Procedure 24. Dkts. 62, 63 ("Motion"). Plaintiffs and Defendants oppose the motion. Dkts. 70, 72 ("Defts. Opp."). For the following reasons, the Court denies NAS's motion to intervene, but grants NAS leave to file a brief as an *amicus curiae*.

## I. Background

NAS's mission and goals are to "uphold the traditional standards of a liberal arts education that fosters intellectual freedom, searches for truth, and promotes virtuous citizenship." Dkt. 63-3 ("Wood Decl.") ¶ 9. To advance this mission, NAS "defends academic freedom of faculty members, students, and others through issue advocacy, investigative research, and the publication of reports that highlight issues pertaining to higher education." *Id.* ¶ 10. NAS "opposes [Diversity Equity, and Inclusion ('DEI')] programs and requirements within higher education . . . because it believes that they undermine academic freedom and are counter to academic excellence and individual merit and achievement." *Id.* ¶ 12.

"NAS and its members believe that hiring for faculty and research positions and the

awarding of research funding should be based on intellectual or scientific merit, rather than on notions of diversity, equity and inclusion." *Id.* ¶ 14. NAS's members "regularly apply for and have received federal research grants from federal government agencies, including the National Science Foundation [('NSF')]." *Id.* ¶ 17. NAS "believes that its members who are not in a preferred racial or gender group, or not considered as part of an underrepresented minority[,] are at a disadvantage in obtaining faculty or research positions or competing for federal research grants when gender or racial preferences are imposed." *Id.* ¶ 18.

Plaintiffs in this action are sixteen states challenging, *inter alia*, recent terminations of grant awards resulting from a change in NSF's priorities as reflected in the agency's *Statement of U.S. National Science Foundation Priorities* (the "Priority Directive"). *See* Dkt. 1-1.[1] Plaintiffs allege that Congress has directed NSF to "undertake activities for the specific purpose of increasing [science, technology, engineering, and mathematics ('STEM')] participation by women, minorities, and people with disabilities." Dkt. 1 (Complaint) ¶ 37; *see id.* ¶¶ 31-36, 38-42. According to Plaintiffs, the Priority Directive "discard[s] the national policy ordained by Congress," and "ignores relevant statutory mandates by announcing that 'research on broadening participation[] must aim to create opportunities for all Americans everywhere,' and that '[r]esearch projects with more narrow impact limited to subgroups of people based on protected class or characteristics do not effectuate NSF priorities.'" *Id.* ¶¶ 46-47 (quoting the Priority Directive).

Plaintiffs complain that "[o]n the same day that the Priority Directive was posted, and in explicit reliance on the Priority Directive, NSF began terminating awards it claimed were not

---

[1] Plaintiffs also challenge the NSF's *Policy Notice: Implementation of Standard 15% Indirect Cost Rate*, NSF 25-034 (the "Indirect Cost Directive"). NAS "does not take a position" as to Plaintiffs' allegations concerning the Indirect Cost Directive, "other than to assert that the more money directed to actual, meritorious scientific research, rather than administrative and overhead costs, the better." Motion at 4 n.2. The parties' positions as to the Indirect Cost Directive thus have no import to the instant motion.

aligned with its changed priorities." *Id.* ¶ 48.  Among the terminated awards were "numerous awards for projects conducted within" the Plaintiff states.  *Id.*; *see id.* ¶¶ 49-51 (providing examples of terminated projects).  Following these terminations, Plaintiffs commenced this action. Plaintiffs seek to enjoin the Priority Directive and its implementation as violative of the Administrative Procedures Act, *id.* ¶¶ 90-105, and request a declaration that the Priority Directive and its implementation are *ultra vires* and violate the constitutional separation of powers and Take Care Clause, *id.* ¶¶ 106-131.

Along with their Complaint, Plaintiffs moved for a preliminary injunction.  Dkt. 5.  While that motion was being briefed, NAS filed its motion to intervene.  Dkts. 62, 63.  NAS "seeks to intervene in this case to protect it and its members' interest in ensuring that federal research grants funded by the National Science Foundation are evaluated and awarded based on scientific merit, and not based on racial or gender preferences, as advocated by the Plaintiffs in their complaint." Motion at 1.  NAS argues that Plaintiffs' challenge rests on the premise that Congress "mandated that [NSF] utilize racial and gender preferences" to increase participation by underrepresented groups in STEM fields.  *Id.* at 2.  NAS contends that "[t]o the extent those statutes dictate racial and gender preferences for allocating scarce scientific research funding . . . they are contrary to the Equal Protection guarantees incorporated into the Fifth Amendment of the U.S. Constitution."  *Id.*

## II.  Discussion

"Intervention is a procedural device that attempts to accommodate two competing policies: efficiently administrating legal disputes by resolving all related issues in one lawsuit, on the one hand, and keeping a single lawsuit from becoming unnecessarily complex, unwieldy or prolonged, on the other hand."  *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994).  Federal Rule of Civil Procedure 24 governs intervention of two kinds: intervention of right and permissive intervention.  The Court addresses each in turn.

3

### A.  Intervention of Right

Rule 24(a) covers intervention of right.  NAS seeks to intervene as of right under Rule 24(a)(2), *see* Motion at 5-6, which provides:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).  "To prevail on a motion for intervention as of right, a movant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action."  *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 799 (2d Cir. 2022) (internal quotation marks omitted).  "[F]ailure to satisfy *any one* of these four requirements is a sufficient ground to deny the application." *Floyd v. City of New York*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

NAS fails to "show that [its] interest is not protected adequately by the parties to the action."  *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th at 799.  To start, NAS's interest in this litigation is aligned with Defendants' interest.  NAS asserts that it and its members "have an interest in ensuring that gender and racial preferences play no role in [NSF's] awards process, and that such funding is allocated solely based on scientific merit and other lawful considerations in alignment with the . . . Priority Directive."  Motion at 2.  NAS seeks to intervene in this litigation "to protect that interest."  *Id.*  As NAS explains, "[s]imilar to the Priority Directive," it believes research funding should be allocated based on principles of merit, competition, equal opportunity, and excellence.  *Id.* at 5 (citing Wood Decl. ¶¶ 12, 14).

NAS's stated interest thus is to defend the Priority Directive and its method for allocating

grant awards. *See id.* at 7-8 ("The Priority Directive thus aligns with and furthers NAS's mission and goals."); *id.* at 8 ("The Priority Directive will benefit NAS and its members within STEM disciplines, who aim to compete for National Science Foundation funding based on merit, without consideration of gender or racial preferences or related DEI interests."). Defendants not only hold this same interest, but are actively arguing to defend the Priority Directive in this litigation. *See* Dkt. 53 ("Defts. PI Opp.").

"The burden to demonstrate inadequacy of representation is generally speaking minimal." *Neversink Gen. Store v. Mowi USA, LLC*, No. 20 Civ. 9293 (PAE), 2021 WL 1930320, at *5 (S.D.N.Y. May 13, 2021) (citation modified). But the Second Circuit "demand[s] a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001). "Where there is an identity of interest, as here, the movant to intervene must rebut the presumption of adequate representation by the party already in the action." *Id.* at 179-180. Although not an "exhaustive list," the Second Circuit has said that "evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy." *Id.* at 180.

NAS has not rebutted the presumption of adequate representation by Defendants. NAS raises no argument based on collusion, nonfeasance, or incompetence. Instead, NAS's lead argument for inadequacy is its belief "that Plaintiffs' interpretation that the relevant statutes mandate racial and gender preferences is contrary to the Constitution's Equal Protection guarantee," and NAS's related worry that Defendants "may feel compelled to defend the constitutionality of the statutes if there is a plausible argument to be made to uphold the statute." Motion at 10.

This argument relies on a hypothetical divergence between NAS's viewpoint and Defendants' which has not emerged in this litigation. NAS argues that, in Defendants' opposition

brief to Plaintiffs' motion for a preliminary injunction, "Defendants focused little of their argument on Plaintiffs' argument that the Priority Directive was contrary to statutory law mandating the use of racial and gender preferences." *Id.*  The Court does not view a purported failure by Defendants to allocate additional briefing space in a single filing to NAS's preferred line of attack as sufficient to rebut the presumption of adequacy, particularly where Defendants were responding to a request for preliminary relief and where the Priority Directive was one of two policies at issue. Defendants' opposition lodged a variety of jurisdiction- and merits-based arguments to defend the Priority Directive.  *See* Defts. PI Opp. at 7-16.  Such advocacy at the early stages of this case indicates that Defendants fully intend to vigorously defend the Priority Directive.  *See Nat. Res. Def. Council, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987) ("So long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented.").

In addition, while NAS criticizes Defendants' argument "that their actions pursuant to the Priority Directive were consistent with those laws," Motion at 10, Defendants' briefing appears to align with NAS's views.  *See* Defts. PI Opp. at 14 ("NSF is continuing to fund grants that generally encourage participation in science, mathematics, and engineering, which will necessarily have the effect of encouraging the participation of the populations addressed in the statutes."); *see also* Dkt. 54 (declaration of Defendant Brian Stone) ¶ 21 (same).  NAS's speculation about what Defendants "may feel" inclined to argue at a later stage in this litigation, Motion at 10, does not suffice to rebut the presumption of adequacy.

 In addition, even assuming *arguendo* that Defendants "may not press the Equal Protection arguments with the same vigor as NAS," *id.*, that alone does not entitle NAS to intervention. "Representation is not inadequate simply because the applicant would . . . press for more drastic

relief, or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy." *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) (citation modified); *see Secs. & Exch. Comm'n v. AmTrust Fin. Servs., Inc.*, No. 20 Civ. 4652 (LLS), 2020 WL 4390745, at *3-4 (S.D.N.Y. July 31, 2020). NAS "would need to demonstrate that it has a legal interest that not only differs from the [Defendants'] interest, but would permit [NAS] to assert a justification for the [Priority Directive] that could not be equally asserted by" Defendants. *Schwartz v. Town of Huntington Zoning Bd. of Appeals*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000). NAS makes no argument to this effect. As "[t]he governmental parties to this litigation share [NAS's] concerns [in defending the Priority Directive] . . . their representation is not inadequate simply because they have different ideas about how best to achieve these goals." *City of New York*, 198 F.3d at 367.[2]

NAS alludes to potential adversity between itself and the government in the future. NAS argues that "there is no guarantee that the Priority Directive issued by [NSF] will remain unchanged," and "[t]his administration or a new administration could resurrect policies for allocating research funding pursuant to unlawful race- and sex-based criteria." Motion at 11. But such a contingency does not suffice to show Defendants' inadequacy, especially considering their actions in this litigation to date. If NSF's policy does change, NAS could bring its own lawsuit to

---

[2] NAS and Defendants disagree about whether Defendants' status as governmental actors heightens the standard for Plaintiffs to show inadequacy. *Compare* Motion at 10 n.4, *with* Defts. Opp. at 2-3 & n.1. The Court need not pass on this issue. Even accepting *arguendo* NAS's argument that the Court should follow the Western District of New York's opinion in *Herdman v. Town of Angelica*, 163 F.R.D. 180 (W.D.N.Y. 1995), NAS still fails to rebut the presumption of adequacy. *Herdman* distinguished between cases where the government sued as *parens patriae* to enforce laws with ones where the government "defend[ed] the legality of its actions or the validity of its laws or regulations." *Id.* at 190. The court in *Herdman* identified that a heightened presumption of adequacy applied only in the former cases, and that in the latter cases "courts should examine both (1) whether the government entity has demonstrated the motivation to litigate vigorously and to present all colorable contentions, and (2) the capacity of that entity to defend its own interests and those of the prospective intervenor." *Id.* Defendants have satisfied both of these considerations here. *Herdman* therefore does not help NAS.

vindicate its arguments.    Moreover, accepting NAS's argument would justify private actor intervention "in every case in which the federal [g]overnment defends a rule or statute," as the government's position could always conceivably change.  *New York v. U.S. Dep't of Health & Human Servs.* ("*H.H.S.*"), Nos. 19 Civ. 4676 (PAE), 19 Civ. 5433 (PAE), 19 Civ. 5435 (PAE), 2019 WL 3531960, at \*6 (S.D.N.Y. Aug. 2, 2019).  This would not accord with the limited scope of intervention of right authorized by Rule 24(a).  *See Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) ("[T]he mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits.").

Nor does the Court have reason to believe that "reversion to [prior] practices," Motion at 11, is likely during the life of this litigation, given Defendants' vigorous advocacy thus far defending the Priority Directive.  NAS's citation to *Kleissler v. United States Forest Service*, 157 F.3d 964, 973-74 (3d Cir. 1998), where the Third Circuit reversed the district court's denial of intervention as of right, is unpersuasive.  There, the government's inconsistent actions in companion litigation gave "legitimate pause to the [proposed intervenors'] confidence in adequate representation by the" government.  *Id.* at 973.  This conclusion was strengthened by the government's representation of "numerous complex and conflicting interests in matters of this nature," leading the Third Circuit to determine that "[t]he straightforward business interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies."  *Id.* at 973-74.  Here, there have been no instances of inconsistent actions taken by the government since this litigation commenced.

Accordingly, NAS has failed to show its interests are "not protected adequately by the parties to the action."  *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th at 799.  Because this is a required showing under Rule 24(a)(2), *see Floyd*, 770 F.3d at 1057, NAS's

motion to intervene of right is denied.

## B. Permissive Intervention

NAS alternatively seeks permissive intervention under Rule 24(b)(1)(B). *See* Motion at 11-12. This Rule provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court has "broad discretion" in determining whether to grant a motion for permissive intervention. *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005). "The court considers substantially the same factors whether the claim for intervention is 'of right' under [Rule] 24(a)(2), or 'permissive' under [Rule] 24(b)(2)." *R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006). Yet, "[i]n exercising its discretion" over a motion for permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

The Court declines to grant NAS's alternative request for permissive intervention. The Court's conclusion that Defendants adequately represent NAS's interests in this litigation weighs against permissive intervention. *See H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (including "the degree to which [the intervenor's] interests are adequately represented by other parties" among the "relevant factors" to consider in adjudicating a request for permissive intervention). But this factor is not dispositive because Rule 24(b) does not require a movant seeking permissive intervention to show inadequacy of representation. *See Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17 Civ. 957 (ADS), 2017 WL 6459464, at *13 (E.D.N.Y. Dec. 15, 2017) ("While many courts have denied permissive intervention where there was adequate representation, other courts have found permissive intervention warranted even where there was adequacy of representation." (collecting cases)); *Green v. Biden*, No. 24 Civ. 1975 (MKB), 2024 WL 4932751, at *7 (E.D.N.Y. Dec. 2, 2024) ("[D]istrict courts routinely grant

permissive intervention to applicants even in cases where the court has found that the existing party adequately represents the proposed intervenor's interest."). Instead, "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will assist in the just and equitable adjudication of any of the issues between the parties." *United States v. N.Y.C. Housing Auth.*, 326 F.R.D. 411, 418 (S.D.N.Y. 2018) (internal quotation marks omitted); *see Oneida Grp.*, 2017 WL 6459464, at *13.

The addition of NAS as an intervenor would not aid in the "just and equitable adjudication" of the issues at hand. *N.Y.C. Housing Auth.*, 326 F.R.D. at 418. Unlike cases where permissive intervention was granted, no intervenor is needed to provide the Court "with a fuller picture to evaluate the fairness, reasonableness, and equities" of this action. *Id.* Plaintiffs and Defendants are well-equipped to provide the information necessary for the Court to consider the relevant statutes, grant awards, and policies, given their experience in administering the grant programs and as applicants and grant recipients. Nor would NAS be "uniquely situated to offer evidence of the balance of hardships" in this matter. *Human Servs. Council of N.Y. v. City of New York*, No. 21 Civ. 11149 (PGG), 2022 WL 4585815, at *5 (S.D.N.Y. Sept. 29, 2022); *see H.H.S.*, 2019 WL 3531960, at *6 (allowing permissive intervention despite adequacy of representation because the proposed intervenors would provide "concrete factual submissions" which would benefit the court in considering the hardships in a motion for preliminary relief). To the contrary, NAS's motion frames its value to the case in legal, not factual, terms. *See* Motion at 10 (contending that NAS would be able to raise constitutional arguments if Defendants are reluctant to do so).

Additionally, the Court shares Defendants' concern that "permitting intervention would encourage other parties to intervene in this lawsuit who claim to have an interest in this case," which would result in "the piling on of parties, delay, extra cost, and increased risk of error."

Defts. Opp. at 4 (citation modified) (citing *Mass. Sch. of L. at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997); *United States v. Yale Univ.*, 337 F.R.D. 35, 45-46 (D. Conn. 2021)).  It is foreseeable that additional parties would seek intervention to counter NAS's arguments, which could lead to further delay to these proceedings.

The Court therefore declines to grant NAS's motion for permissive intervention.[3]

## C.  Participation as *Amicus Curiae*

Defendants suggest that the Court permit NAS to participate in this matter as *amicus curiae* rather than as an intervenor.  Defts. Opp. at 3.  "It is well-established that a district court has broad discretion to grant or deny an appearance as *amicus curiae* in a given case."  *Picard v. Greiff*, 797 F. Supp. 2d 451, 452 (S.D.N.Y. 2011); *see United States v. Adams*, 348 F.R.D. 408, 409 (S.D.N.Y. 2025) (characterizing the appointment of *amicus curiae* as an exercise of the court's "inherent authority").

Because NAS's perspective may be useful to the Court's consideration of this case, the

---

[3] NAS's motion is not accompanied by a pleading, as required by Rule 24(c).  *See* Fed. R. Civ. P. 24(c) ("A motion to intervene must . . . be accompanied by a pleading that sets out the claim or defense for which intervention is sought.").  "In this Circuit, courts have held that Rule 24(c) permits a degree of flexibility with technical requirements and have dispensed with the pleading requirement when the proposed intervenor[']s position is clearly articulated in its motion papers."  *In re Genger*, No. 19-13895 (JLG), 2024 WL 5251949, at *3 (Bankr. S.D.N.Y. Dec. 30, 2024) (citation modified).  To the extent NAS argues that its litigation position and Defendants' are truly adverse in that NAS would seek to challenge Defendants' adherence to a statutory framework NAS believes is unconstitutional, that position is not "apparent from other filings" so as to excuse its noncompliance with Rule 24(c).  *Tachiona ex rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002); *cf.* Motion at 12 (arguing for permissive intervention because NAS might otherwise "challenge in another venue the statutes that promote racial and gender preferences for [NSF's] research grants").  The motion may therefore be independently denied on that ground.  *See Abramson v. Pennwood Inv. Corp.*, 392 F.2d 759, 761-62 (2d Cir. 1968) (affirming the denial of a motion to intervene where the movant "fail[ed] to file a pleading along with his motion papers, as required by Rule 24(c)"); *see also In re OpenAI, Inc., Copyright Infringement Litig.*, No. 25 Md. 3143 (SHS) (OTW), No. 23 Civ. 11195 (SHS) (OTW), 2025 WL 1726973, at *2 (S.D.N.Y. June 20, 2025) (denying a motion to intervene because the proposed intervenor did not attach a proposed pleading and the court could not "readily determine what claims or defenses [the proposed intervenor] is trying to assert").

Court will allow it to participate as *amicus curiae* and grants NAS leave to file an *amicus* brief in connection with Plaintiffs' pending motion for a preliminary injunction. *See City of Syracuse, NY v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 20 Civ. 6885 (GHW), 2021 WL 23326, at *5 (S.D.N.Y. Jan. 2, 2021) ("[T]he alternative to intervention is that the Proposed Intervenors participate as *amicus curiae*." (citation modified)); *accord* Defts. Opp. at 3 (arguing that in an *amicus* capacity "NAS could present any arguments that it believes are relevant to the Court's consideration, which would protect any interests it believes are not encompassed by [Defendants'] advocacy"). In this capacity, NAS would not have the right to discovery, to make motions, or to appeal. *Cf. United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 992 (2d Cir. 1984). Moreover, NAS would be required to seek leave of court prior to filing further submissions in this case in addition to the brief authorized herein. The Court finds that this approach strikes an appropriate balance that respects NAS's interests in this litigation while also ensuring the efficient administration of this dispute.

### III. Conclusion

NAS's motion to intervene is denied. The Clerk of Court is respectfully directed to close Docket Number 62. NAS may file a brief as *amicus curiae* addressing Plaintiffs' motion for a preliminary injunction. Any such *amicus* brief shall be filed by July 7, 2025.

The parties are ordered to appear before the undersigned for a hearing on Plaintiffs' motion for a preliminary injunction. The hearing will take place on July 9, 2025, at 1:00 p.m., in Courtroom 12D of the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007. If either Plaintiffs or Defendants intend to call witnesses at the hearing, the parties shall notify the Court by letter no later than July 3, 2025. If no such letter is filed by that date, the Court will adjudicate the motion based on the papers and the arguments at the hearing.

       SO ORDERED.

Dated: June 30, 2025
       New York, New York

                                JOHN P. CRONAN
                        United States District Judge